## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDULKADR ABDULKHALIK DAD,<br><br>    Detainee,<br>    Guantánamo Bay Naval Station<br>    Guantánamo Bay, Cuba<br><br>                Petitioner/Plaintiff,<br><br>       - against -<br><br>GEORGE W. BUSH,<br>    President of the United States<br>    The White House<br>    1600 Pennsylvania Ave., N.W.<br>    WASHINGTON, D.C. 20500;<br><br>DONALD RUMSFELD,<br>    Secretary, United States<br>    Department of Defense<br>    1000 Defense Pentagon<br>    WASHINGTON, D.C. 20301-1000;<br><br>ARMY BRIG. GEN. JAY HOOD,<br>    Commander, Joint Task Force - GTMO<br>    JTF-GTMO<br>    APO AE 09360; and<br><br>ARMY COL. MIKE BUMGARNER,<br>    Commander, Joint Detention<br>    Operations Group - JTF-GTMO,<br>    JTF-GTMO<br>    APO AE 09360,<br><br>            Respondents/Defendants. | Case No.<br><br><br>**MEMORANDUM OF<br>POINTS AND AUTHORITIES** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S
MOTION FOR A PRELIMINARY INJUNCTION DIRECTING RESPONDENTS TO
PROVIDE THE COURT AND PETITIONER'S COUNSEL THIRTY
DAYS' ADVANCE NOTICE OF ANY INTENDED TRANSFER FROM
GUANTÁNAMO FOR PURPOSES OTHER THAN RELEASE**

Petitioner Abdulkadr Abdulkhalik Dad ("Petitioner") relies on the following points and

authorities in support of his motion under Rule 65 of the Federal Rules of Civil Procedure, LCvR

65.1, and the All Writs Act, 28 U.S.C. § 1651(a), requesting that the Court enter an order

preliminarily enjoining Respondents from removing Petitioner from the United States Naval

Station at Guantánamo Bay, Cuba ("Guantánamo") for any purpose other than release, unless the

Court and counsel for Petitioner receive thirty (30) days' advance notice of such removal.

## I.    INTRODUCTION

Petitioner's request for injunctive relief arises from recent circumstances that may

directly affect this Court's jurisdiction over and practical ability to adjudicate Petitioner's

pending *habeas corpus* petition. On March 11, 2005, *The New York Times* reported

Respondents' intention to transfer hundreds of detainees from Guantánamo "to prisons in Saudi

Arabia, Afghanistan and Yemen." Douglas Jehl, *Pentagon Seeks to Shift Inmates from Cuba

Base*, N.Y. TIMES (Mar. 11, 2005).[1] The *New York Times* report stated that "[a] Feb. 5

memorandum from Defense Secretary Donald H. Rumsfeld calls for broader interagency support

for the plan, starting with efforts to work out a significant transfer of prisoners to Afghanistan."

*Id.* On April 26, 2005, the Department of Defense announced that 65 Guantánamo detainees

have thus far been transferred to the control of other governments, and that "the department

expects that there will be other transfers . . . ." *U.S. Department of Defense, News Release*,

Apr. 26, 2005 (Posa Decl., Exh. B).

On October 13, 2005, counsel for Petitioner sought to obtain assurances from

Respondents that they would provide thirty days' advance notice to the Court and counsel of any

---

[1] *See* Exhibit A to the Declaration of Cristina M. Posa in Support of Petitioner's Motion for a Preliminary Injunction Directing Respondents to Provide the Court and Petitioner's Counsel Thirty Days' Advance Notice of Any Intended Transfer from Guantánamo for Purposes Other Than Release ("Posa Decl.").

3

intended transfer of Petitioner from Guantánamo for purposes other than release. *See* Posa Decl. ¶ 2. Respondents refused to provide any such assurances and indicated that they will oppose any motion seeking such relief. *Id.*

Absent injunctive relief, Respondents could transfer Petitioner to the custody of Afghanistan or another third country without notice to the Court or counsel. In addition to exposing Petitioner to the substantial risks of torture and indefinite detention without charge, such a circumstance would as a practical matter eliminate Petitioner's ability to obtain habeas relief in this Court. Alternatively, Respondents could transfer Petitioner from Guantánamo to another U.S.-operated detention center overseas for continued indefinite detention.

Petitioner seeks narrowly tailored relief that will cause no harm to Respondents. The motion requests thirty days' notice of any transfer of Petitioner from Guantánamo for purposes other than release – *i.e.*, in those circumstances where Respondents lack an understanding with the receiving country that the intended transfer is for purposes of release only; or in the event that Respondents intend to transfer Petitioner to another U.S. detention facility overseas (*e.g.*, the U.S.-operated prison at the Bagram Air Base in Afghanistan). Such relief would allow a timely opportunity to challenge the transfer, if necessary.

Accordingly, Petitioner respectfully requests that the Court preliminarily enjoin Respondents from removing Petitioner from Guantánamo for any purpose other than release, unless the Court and counsel for Petitioner receive thirty days' advance notice of such removal.

## II.     STATEMENT OF FACTS

Simultaneously with the filing of the instant motion, undersigned counsel is filing a Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief (the "Petition") on behalf of Petitioner under 28 U.S.C. § 2241. Petitioner is a citizen of Afghanistan. He was detained by Coalition Forces in Afghanistan or Pakistan on dates unknown to counsel for

4

Petitioner but known to Respondents. Petition ¶¶ 4, 6, 8, 10, 12, 14, 16-18. The Petition alleges that Petitioner is being held virtually *incommunicado* in military custody at Guantánamo without lawful basis, charge, access to counsel or any fair process by which they might challenge their designation and potentially indefinite detention as "enemy combatants."[2]

Petitioner has reason to believe that Respondents, without prior notice to the Court or counsel, may transfer him (a) to the custody of Afghanistan or another foreign country where he may be detained indefinitely without due process of law and may be subjected to torture; or (b) to a U.S.-operated detention facility in Afghanistan or another foreign country for continued, indefinite detention without due process of law. This belief is based on recent statements by the U.S. government and on credible news reports.

In May 2005, President Bush and President Hamid Karzai issued the Joint Declaration of the United States-Afghanistan Strategic Partnership, stating that "the Afghan Government intends to maintain capabilities for the detention, as appropriate, of persons apprehended in the War on Terror." *See* White House Press Release (May 23, 2005), *available at* http://www.whitehouse.gov/news/releases/2005/05/print/20050523-2.html (last visited October 13, 2005) (Posa Decl., Exh. C).

---

[2]  On or about July 8, 2005, Respondents filed a motion to stay all proceedings in this case pending the resolution of all appeals in *In re Guantánamo Detainees Cases*, Nos. 02-CV-299, *et al.*, 355 F. Supp. 2d 443 (D.D.C. 2005), *petition for interlocutory appeal granted*, No. 05-8003 (D.C. Cir. Mar. 10, 2005), and *Khalid v. Bush*, No. 04-CV-1142 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), *appeals docketed*, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005). Simultaneously with the filing of the instant motion, counsel for Petitioners are filing a Motion for the Immediate Issuance of a Writ of Habeas Corpus or Order to Show Cause Under 28 U.S.C. § 2243 ("Order to Show Cause"), in addition to a motion for entry of the November 8, 2004 Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba. Because Respondents only allow travel to Guantánamo and privileged communications with detainees upon the entry of provisions similar to those described in the Amended Protective Order, undersigned counsel have not yet met or corresponded with Petitioner Dad.

On August 4, 2005, the U.S. Department of State announced that pursuant to this

Declaration, "Afghanistan and the United States reached an understanding that will allow for the

gradual transfer of many Afghan detainees to the exclusive custody and control of the Afghan

Government." Press Release of the U.S. Embassy in Islamabad, Pakistan, Aug. 5, 2005,

*available at* http://islamabad.usembassy.gov/pakistan/h05080501.html (last visited October 13,

2005) (Posa Decl., Exh. D). The *Washington Post*, however, has reported that Afghanistan's

infrastructure is a "major obstacle" to the transfer of Afghan detainees pursuant to this

agreement. According to the *Post*, "One possible interim solution under consideration is that

Afghan detainees at Guantánamo could be transferred to Bagram until permanent facilities are

built." Josh White & Robin Wright, "Afghanistan Agrees to Accept Detainees," WASH. POST, at

A1, Aug. 5, 2005 (Posa Decl., Exh. E).

These recent developments are in keeping with reports in the *Washington Post* in January

2005 that the U.S. government was considering a proposal to "transfer of large numbers of

Afghan, Saudi and Yemeni detainees from the military's Guantánamo Bay, Cuba, detention

center into new U.S.-built prisons in their home countries." Dana Priest, *Long-Term Plan Sought

for Terror Suspects*, WASH. POST, at A1, Jan. 2, 2005 (Posa Decl., Exh. F). The report noted that:

> One approach used by the CIA has been to transfer captives it
> picks up abroad to third countries willing to hold them indefinitely
> and without public proceedings. The transfers, known as
> "renditions," depend on arrangements between the United States
> and other countries, such as Egypt, Jordan and Afghanistan, that
> agree to have local security services hold certain terror suspects
> in their facilities for interrogation by CIA and foreign liaison
> officers. (*Id.*)

In February 2005, *The New Yorker* reported that the U.S. government has repeatedly

transferred detainees into the custody of foreign governments that employ inhumane

interrogation techniques. This process of "extraordinary rendition" was originally "a program

6

aimed at a small, discrete set of suspects – people against whom there were outstanding foreign

arrest warrants," but since September 11, 2001, the government has greatly expanded the

practice to include "a wide and ill-defined population that the Administration terms 'illegal

enemy combatants.' Many of them have never been publicly charged with any crime." Jane

Mayer, *Outsourcing Torture*, THE NEW YORKER (Feb. 14, 2005), *available at*

http://www.newyorker.com/fact/content/?050214fa_fact6 (last visited October 13, 2005) (Posa

Decl., Exh. G). The article noted the damaging effect extraordinary renditions would have on any

future attempts to try the detainees in U.S. courts. According Michael Scheuer, a former CIA

counter-terrorism expert who helped establish the practice of rendition, once a detainee's rights

have been violated, "you absolutely can't" reinstate him into the court system. "All we've done

is create a nightmare." *Id.*

Assuming that detainees transferred from Guantánamo to U.S. custody in Afghanistan are

eventually transferred to Afghan custody, Respondents know that the detainees will be at risk of

indefinite detention without due process and torture in prisons beyond the reach of the Afghan

legal system. According to the U.S. State Department, in 2004, the Afghan intelligence agency

operated at least two private prisons, "and there were unconfirmed reports of private detention

facilities around Kabul and in northern regions of the country. Representatives of international

agencies and the [Afghan Independent Human Rights Commission] were unable to gain access

to these prisons during the year. . . . There were credible reports that some detainees were

tortured to elicit confessions while awaiting trial." U.S. DEP'T OF STATE, *Country Reports on*

*Human Rights Practices, Afghanistan* § 1(d) (Feb. 28, 2005), *available at*

http://www.state.gov/g/drl/rls/hrrpt/2004/41737.htm (last visited October 13, 2005) (Posa Decl.,

Exh. H); *see also id.* § 1(c) ("Prisoners reportedly were beaten, tortured, or denied adequate

food."). Human Rights Watch also has documented "numerous cases of torture, beatings, and other mistreatment of persons in the custody of local Afghan military officials." *Enduring Freedom: Abuses by U.S. Forces in Afghanistan*, HUMAN RIGHTS WATCH, at 42-43 (Mar. 2004), *available at* http://hrw.org/reports/2004/afghanistan0304 (last visited October 13, 2005) (Posa Decl., Ex. I).

There is little reason to believe that detainees will fare much better in U.S. custody in Afghanistan. On March 12, 2005, the *New York Times* reported that two Afghan prisoners died in U.S. custody at the Bagram airbase detention center in December 2002 after being "chained to the ceiling, kicked and beaten by American soldiers in sustained assaults that caused their deaths." Douglas Jehl, *Army Details Scale of Abuse in Afghan Jail*, N.Y. TIMES, at A1, Mar. 12, 2005 (Posa Decl., Exh. J). According to an Army report, the attacks on one detainee were so severe that "even if he had survived, both legs would have had to be amputated." *Id.*; *see also* Tim Golden, *In U.S. Report, Brutal Details of 2 Afghan Inmates' Deaths*, N.Y. TIMES, AT A1, May 20, 2005 (Posa Decl., Exh. K). On May 12, 2005, the *New York Times* also reported a former Afghan police colonel's claim – made long before the abuses at Abu Ghraib in Iraq came to light – of being subjected to beating, kicking, sleep deprivation, taunts and sexual abuse while detained in U.S. detention centers in Afghanistan in July 2003. Carlotta Gall, *Afghan Gives Own Account of U.S. Abuse*, N.Y. TIMES, AT A1, May 12, 2005 (Posa Decl., Exh. L).

## III.   ARGUMENT

In *Rasul v. Bush*, the Supreme Court held that 28 U.S.C. § 2241 "confers on the District Court jurisdiction to hear Petitioner's habeas corpus challenges to the legality of their detention at the Guantánamo Bay Naval Base." 124 S. Ct. 2686, 2698 (2004). If Respondents transfer Petitioner to the custody of another country without notifying the Court or counsel, Petitioner may lose the opportunity to contest his detention in a U.S. court.

8

This Court has the power, under the All Writs Act, 28 U.S.C. § 1651(a), "to issue injunctions to protect its jurisdiction." *S.E.C. v. Vision Comm'ns, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Environmental Def. Fund, Inc. v. E.P.A.*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973) (appellate court had inherent power under All Writs Act to enjoin non-parties to protect jurisdiction over appeal). This Court may also issue a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure "to preserve the status quo between the parties before the court pending a decision on the merits of the case at hand." *In re Baldwin-United Corp.*, 770 F.2d 328, 338 (2d Cir. 1985).

Here, Petitioner seeks minimal and non-intrusive relief – 30 days' notice of any transfer for purposes other than release – to allow an opportunity to be heard in this Court should Respondents seek a potentially irreversible change in Petitioner's detention status. "[F]ederal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts for the protection of their rights in those tribunals." *Abdah v. Bush*, No. 04-CV-1254 (HHK), 2005 WL 711814, at *4 (D.D.C. Mar. 29, 2005) (granting preliminary injunction requiring 30 days' notice of transfer; internal quotation and citation omitted).

The weight of authority in this District strongly favors entry of Petitioner's requested relief. The Courts of this District have granted preliminary injunctive relief in seven Guantánamo detainee cases.[3] These decisions grant broader relief than Petitioner requests here,

---

[3] *See Abdah v. Bush*, No. 04-CV-1254 (HHK) (RMC), 2005 WL 589812 (D.D.C. Mar. 12, 2005) (granting temporary restraining order); *Abdah v. Bush*, No. 04-CV-1254 (HHK), 2005 WL 711814 (D.D.C. Mar. 29, 2004) (granting preliminary injunction); *Al-Joudi v. Bush*, No. 05-CV-301 (GK), 2005 WL 774847 (D.D.C. Apr. 4, 2005) (same); *Al-Marri v. Bush*, No. 04-CV-2035 (GK), 2005 WL 774843 (D.D.C. Apr. 4, 2005) (same); *Al-Mohammed v. Bush*, No. 05-CV-247 (HHK) (Order dated Mar. 30, 2005) (same); *Al-Adahi v. Bush*, No. 05-CV-280 (GK) (Order dated Apr. 28, 2005) (same); *Anam v. Bush*, No. 04-CV-1194 (HHK) (Order dated May 9, 2005)

9

requiring notice even in cases of outright release. In at least 15 other Guantánamo cases, the

Courts of this District have entered non-injunctive orders requiring 30 days' notice of transfer.[4]

Finally, in at least four Guantánamo cases, the Courts of this District have entered stay orders

restricting all transfers pending the resolution of the appeals in *In re Guantánamo Detainees*

*Cases*, No. 05-8003 (D.C. Cir.), and *Khalid v. Bush*, Nos. 05-5062, 05-5063 (D.C. Cir.).[5]

An unannounced transfer of Petitioner from Guantánamo to Afghanistan, Pakistan or

another country for continued, indefinite detention without charge would threaten this Court's

ability to adjudicate Petitioner's challenge to the legality of his detention under *Rasul*. For this

reason, and because Petitioner satisfies the requirements for a preliminary injunction, the Court

should enjoin Respondents from transferring Petitioner from Guantánamo for any purpose other

---

(same); *Alhami v. Bush*, No. 05-CV-359 (GK) (Order dated June 9, 2005) (same). *But see Almurbati v. Bush*, No. 04-CV-1227 (RBW) (Order dated Apr. 13, 2005, denying preliminary injunction but requiring government, upon transfer, to certify that transfer was not for purposes of continued detention on behalf of U.S. or to extinguish jurisdiction); *Al-Anazi v. Bush*, No. 05-CV-345 (JDB), 2005 WL 1119602 (D.D.C. Apr. 21, 2005) (denying motion for preliminary injunction).

[4] *See Al-Oshan v. Bush*, No. 05-CV-520 (RMU) (Order dated Mar. 31, 2005; requiring 30-days' notice prior to transfer); *Al-Wazan v. Bush*, No. 05-CV-329 (PLF) (Order dated Apr. 1, 2005) (same); *Al-Shiry v. Bush*, No. 05-CV-490 (PLF), 2005 WL 1384680 (D.D.C. Apr. 1, 2005) (same); *Kurnaz v. Bush*, No. 04-CV-1135 (ESH), 2005 WL 839542 (D.D.C. Apr. 12, 2005) (same); *Ameziane v. Bush*, No. 05-CV-392 (ESH), 2005 WL 839542 (D.D.C. Apr. 12, 2005) (same); *Qayed v. Bush*, No. 05-CV-454 (RMU) (Order dated Apr. 6, 2005) (same); *Tumani v. Bush*, No. 05-CV-526 (RMU) (Order dated Apr. 6, 2005) (same); *El Banna v. Bush*, No. 04-CV-1144 (RWR) (Order dated Apr. 8, 2005) (same); *Abdullah v. Bush*, No. 05-CV-23 (RWR) (Order dated Apr. 8, 2005) (same); *Al Rashaidan v. Bush*, No. 05-CV-586 (RWR) (Order dated Apr. 8, 2005) (same); *Adem v. Bush*, No. 05-CV-723 (RWR) (Order dated June 6, 2005) (same); *Mokit v. Bush*, No. 05-CV-621 (PLF) (Order dated June 16, 2005) (same); *Al-Hela v. Bush*, No. 05-CV-1048 (RMU) (Order dated June 3, 2005) (same); *Al Shamri v. Bush*, No. 05-CV-551 (RWR) (Order dated May 10, 2005) (same); *Al Daini v. Bush*, No. 05-CV-634 (RWR) (Order dated June 6, 2005) (same).

[5] *See El-Mashad v. Bush*, No. 05-CV-270 (JR) (Order dated Apr. 7, 2005, entering stay applicable to release, rendition or transfer); *Qassim v. Bush*, No. 05-CV-497 (JR) (Order dated Apr. 13, 2005) (same); *Salahi v. Bush*, No. 05-CV-569 (JR) (Order dated Apr. 15, 2005) (same); *Aziz v. Bush*, No. 05-CV-492 (JR) (Order dated Apr. 22, 2005) (same).

than release, unless they provide the Court and counsel with 30 days' prior notice of the intended transfer.

## A.   PRELIMINARY INJUNCTION STANDARD

A court considering a preliminary injunction request must examine four factors: (1) whether Petitioner will be irreparably harmed if an injunction is not granted; (2) whether there is a substantial likelihood Petitioner will succeed on the merits; (3) whether an injunction will substantially injure Respondents; and (4) whether the public interest will be furthered by the injunction. *Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001). "These factors interrelate on a sliding scale and must be balanced against each other." *Serono Labs. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998). "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995).

Where the balance of hardships tips decidedly toward the movant, it will "ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). "An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable harm on the movant." *Id.*

Here, Petitioner will unquestionably suffer irreparable harm if Respondents transfer him to a country where he is at great risk of being tortured – whether in U.S. or Afghan custody – and over which this Court has no jurisdiction. Given that the requested relief will in no way harm Respondents and is in the public interest, the balance of hardships heavily favors Petitioner. Further, Petitioner can show a substantial likelihood of success on the merits of his Petition,

11

based on the Supreme Court's *Rasul* decision and Judge Joyce Hens Green's decision in *In re Guantánamo Detainees Cases*, Nos. 02-CV-299, *et al.*, 355 F. Supp. 2d 443 (D.D.C. 2005), that Guantánamo detainees have enforceable rights under the Due Process Clause of the Fifth Amendment and the Geneva Conventions. At the very least, Petitioner's claims raise serious questions going to the merits that are a fair ground for litigation. The Court should therefore grant Petitioner's request for a preliminary injunction.

### B.  A PRELIMINARY INJUNCTION IS WARRANTED REQUIRING RESPONDENTS TO PROVIDE THIRTY DAYS' ADVANCE NOTICE OF ANY TRANSFER OF PETITIONER FOR PURPOSES OTHER THAN RELEASE

### 1.    Petitioner Will Suffer Irreparable Harm If A Preliminary Injunction Is Not Granted

Petitioner stands to suffer immeasurable and irreparable harm – ranging from cruel, inhuman or degrading treatment to torture and possible death – if they are transferred for continued detention in Afghanistan or Pakistan. Such a transfer would also circumvent their rights under *Rasul* to adjudicate the legality of their detention in this Court.

In *Al-Joudi v. Bush*, No. 05-CV-301 (GK), Judge Kessler found these harms to be "obvious and substantial":

> First [Petitioners] face the possibility of transfer to a country where they might be tortured or indefinitely confined, which undeniably would constitute irreparable harm. While the Government presents declarations that attempt to mitigate these concerns, they neither refute nor render them frivolous. . . . In short, the threatened injury is not merely remote and speculative; it is a serious potential threat. Second, Petitioners face the threat of irreparable harm based on the potential elimination of their habeas claims. . . . Since such a turn of events would certainly constitute a threat of irreparable harm, an order preserving the status quo in this case is appropriate. . . . [T]he Government is clearly maintaining its right to transfer [Petitioners] at any time . . . . Thus, the threats are not distant or speculative, and transfer could occur in the near future.

2005 WL 774847, at *4 (D.D.C. Apr. 4, 2005).

In granting an application for a temporary restraining order in *Abdah v. Bush*, No. 04-

CV-1254 (HHK) (RMC), this Court concluded that the loss of the right to adjudicate *habeas*

claims could constitute irreparable harm:

> Were the Petitioners to be transferred to the control of a foreign
> country, they would effectively lose their rights to pursue their
> *habeas* claims in this country. The Court finds that their injury
> would be continued detention outside the jurisdiction of the U.S.
> courts – courts that are actively reviewing the constitutionality of
> that very detention. While the Supreme Court has granted them a
> right of access to our court system, such a transfer would terminate
> that right, insofar as it sounds in *habeas corpus*, because U.S.
> courts would no longer have control over their warden.
> Presumably, the Petitioners would suffer no harm if the
> Government were to transfer them to Yemen for release; that is the
> goal of their *habeas* petitions. A transfer with continued
> indeterminate detention with no right of review or further court
> access poses a very different set of parameters. . . .
> [A] continuation of their detention without redress to assess its
> legality could constitute irreparable harm to the Petitioners.

2005 WL 589812, *4 (D.D.C. Mar. 12, 2005). In granting the *Abdah* Petitioner's

subsequent request for a preliminary injunction, Judge Kennedy agreed that "[s]uch transfers

would eliminate any opportunity for Petitioners to ever obtain a fair adjudication of their

fundamental right to test the legitimacy of [their] executive detention." *Abdah v. Bush*, 2005 WL

711814, at *4 (D.D.C. Mar. 29, 2004) (internal quotation omitted).

As in *Al-Joudi* and *Abdah*, this Court should find that the transfer without notice of

Petitioners to Afghanistan, Pakistan or another country for continued detention would constitute

irreparable harm. In addition, Petitioner is likely to succeed on the claim that his detention is

illegal and unconstitutional, *see infra* Part III.B.3. The fact that transfer for purposes other than

release would potentially eliminate his meritorious claims is further evidence of irreparable

harm. *See United States v. Bogle,* 855 F.2d 707, 710-711 (11th Cir. 1988) ("[U]nnecessary

13

deprivation of liberty clearly constitutes irreparable harm."); *Jolly v. Coughlin,* 76 F.3d 468, 482

(2nd Cir. 1996) (unconstitutional confinement raises presumption of irreparable harm).

## 2. Any Burden on Respondents Resulting from the Requested Injunction Is Far Outweighed by the Harm to Petitioners

In contrast to the harm Petitioner will suffer, Respondents can suffer no conceivable harm

from complying with a request for 30 days' prior notice of transfer. A preliminary injunction

here would merely maintain the status quo that Respondents have created and enforced for years.

In *Al-Joudi*, Judge Kessler found that the balance of harms heavily favored Petitioners:

> The Court fails to see any injury whatsoever that the Government
> would suffer from granting the requested preliminary injunction.
> Petitioners request only 30 days' notice of transfer – a narrow and
> discrete request that would impose no burden on the Government.
> Beyond "vague premonitions" that such relief would harm the
> executive's ability to conduct foreign policy, there is no concrete
> evidence that such notice actually will intrude upon executive
> authority. . . . For example, granting Petitioner's request for 30
> days' notice of transfer would not require the Court to second-
> guess foreign policy decisions of the Executive, would not require
> the Government to divulge information relating to its negotiations
> with foreign governments, and would not prevent the Government
> from speaking with one voice.  In weighing the respective
> hardships imposed upon the parties, the balance clearly tilts in
> favor of Petitioners.

*Al-Joudi,* 2005 WL 774847, at *5 (internal citation omitted); *see also Abdah*, 2005 WL

711814, at *6 ("While the injunction Petitioners seek might restrict or delay Respondents with

respect to one aspect of managing Petitioner's detention, such a consequence does not outweigh

the imminent threat facing Petitioners with respect to the *entirety* of their claims before the

court.").

Because any potential harm to Respondents from entry of the requested injunction is

vague, speculative and vastly outweighed by the potential harm to Petitioner, the Court should

14

require Respondents to provide 30 days' prior notice of any intended transfer for purposes other

than release.

**3.    Petitioner Is Likely to Succeed on the Merits of Their Claims**

The Court should also find that Petitioner is likely to succeed on the merits of his *habeas*

*corpus* claims. He has properly invoked the jurisdiction of this Court. *See Rasul*, 124 S. Ct. at

2698. In *Rasul*, the Supreme Court strongly suggested that Guantánamo detainees had

substantive rights that could be redressed under § 2241:

> Petitioner's allegations – that, although they have engaged
> neither in combat nor in acts of terrorism against the United States,
> they have been held in Executive detention for more than two
> years in territory subject to the long-term, exclusive jurisdiction
> and control of the United States, without access to counsel and
> without being charged with any wrongdoing – unquestionably
> describe "custody in violation of the Constitution or laws or
> treaties of the United States."

*Id.* at 2698 n.15 (quoting 28 U.S.C. § 2241(c)(3)). In concluding that Guantánamo

detainees have stated actionable claims under the Due Process Clause of the Fifth Amendment

and the Geneva Conventions, Judge Green stated that "it is difficult to imagine that the Justices

would have remarked that the petitions 'unquestionably describe custody in violation of the

Constitution or laws or treaties of the United States' unless they considered the petitioners to be

within a territory in which constitutional rights are guaranteed." *In re Guantánamo Detainees*

*Cases*, 355 F. Supp. 2d at 463. For Respondents to transfer Petitioner for continued detention in

countries that afford no such protections would flout Judge Green's ruling and defeat the Court's

jurisdiction.

Respondents argue in the appeals of Judges Green and Leon's conflicting rulings that

*Rasul* is an empty vessel – that the Court of Appeals should interpret that decision as merely

granting the right to file an entirely meaningless piece of paper. The Supreme Court, however,

15

indisputably expected the district courts to adjudicate the merits of the detainees' claims. *Id.* at
2699 (remanding "for the District Court to consider in the first instance the merits of Petitioner's
claims"). Respondents also argue in the appeals that the district courts must defer to the results
of the Department of Defense's Combatant Status Review Tribunals ("CSRTs") and dismiss the
detainees' petitions. Again, the Supreme Court has already resolved this issue. In *Hamdi v.
Rumsfeld*, 124 S. Ct. 2633 (2004), the Supreme Court held that due process required, at a
minimum, "notice of the factual basis for [a petitioner's] classification, and a fair opportunity to
rebut the Government's factual assertions before a neutral decision maker." *Id.* at 2648. By
design and in practice, the CSRT proceedings lack these basic protections. *See In re
Guantánamo Detainee Cases*, 355 F. Supp. 2d at 468-78.

In *Abdah v. Bush,* this Court found that:

> Petitioners have at least a fifty-fifty chance of prevailing on their
> constitutional claims before the Court of Appeals and . . . they
> raise serious arguments that require more deliberative
> consideration concerning whether removing them from the Court's
> jurisdiction, while insisting on continued detention, is within the
> province of the Executive.

2005 WL 589812, at *4. In granting a preliminary injunction in *Al-Joudi v. Bush*, Judge Kessler
agreed, finding that "even though the mathematical probability of success is impossible to assess,
there can be no doubt that the questions raised here are so 'serious, substantial, difficult, and
doubtful,' as to make them a 'fair ground for litigation.'" 2005 WL 774847, at *5 (quoting *Wash.
Metro. Area Transit Comm'n*, 559 F.2d at 844).

16

In a case such as this, where the risk of irreparable harm is so great, the Court should

find, as it did with the *Abdah* TRO request, that Petitioner has made a sufficient showing of

likelihood of success on the merits.[6]

## 4.    The Public Interest Favors Injunctive Relief

Finally, public policy favors requiring Respondents to provide advance notice to the

Court and counsel of any intended removal of Petitioner from the Court's jurisdiction for

purposes other than release. "[I]t is always in the public interest to prevent the violation of a

party's constitutional rights." *G&V Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d

1071, 1079 (6th Cir. 1994).

In *Al-Joudi v. Bush*, Judge Kessler found that "the public interest undeniably is served by

ensuring that Petitioner's constitutional rights can be adjudicated in an appropriate manner. . . .

---

[6]    Because Respondents have moved to stay this case pending resolution of the appeals in *In re Guantánamo Detainees Cases* and *Khalid v. Bush*, the Court should also grant the requested injunction to prevent the harm that Federal Rule of Appellate Procedure 23(a) seeks to avoid. Rule 23(a) provides:

> Pending review of a decision in a habeas corpus proceeding commenced
> before a court, justice, or judge of the United States for the release of a
> prisoner, the person having custody of the prisoner must not transfer
> custody to another unless a transfer is directed in accordance with this
> rule.

Rule 23(a) "was designed to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." *Hammer v. Meachum*, 691 F.2d 958, 961 (10th Cir. 1982) (citation omitted). While Petitioner's case is not on appeal, Respondents have argued in moving for a stay that the pending appeals will address "the core issues" in their Petition. Mot. to Stay, at 1. Having directly linked Petitioner's claims with those on appeal, Respondents should not be permitted to extinguish Petitioner's claims by transferring them beyond the Court's jurisdiction. The Court has power to issue an injunction to prevent such an unjust result. *See* 28 U.S.C. § 1651(a); *cf. Abdah v. Bush,* 2005 WL 711814, at *5 ("[Rule 23(a)'s] application here is consistent with both the text of the rule and its underlying purpose.").

17

Retaining jurisdiction over this case is essential to protecting that public interest." 2005 WL

774847, at *6. Likewise, in *Abdah v. Bush*, Judge Kennedy concluded:

> Petitioner's current designation as enemy combatants is not
> a foregone conclusion; challenges to the accuracy and legitimacy
> of the government's determination that Petitioners have engaged in
> hostilities against the United States, or aided those who have, are
> the very core of Petitioner's underlying habeas claims. . . . [T]he
> public has a strong interest in ensuring that its laws do not subject
> individuals to indefinite detention without due process.

2005 WL 711814, at *6. No matter how satisfied Respondents may be that their actions

are lawful, the public good requires that federal litigants – properly before the Court and

represented by counsel – be provided with a meaningful opportunity to contest their transfer into

the hands of those who might torture them or detain them indefinitely. Accordingly, the public

interest favors the entry of the requested injunction.

## CONCLUSION

Fair notice and an opportunity to be heard are the bedrock principles of due process.

Petitioner's requested relief is concrete, narrow, and minimally burdensome. For the reasons set

forth above, Petitioner respectfully requests that the Court grant his application for a preliminary

injunction prohibiting Respondents from removing him from Guantánamo for purposes other

than release without 30 days' advance notice to the Court and counsel.

18

Dated:  October 14, 2005                Respectfully submitted,

                                        Counsel for Petitioner:

                                        Ronald G. Blum
                                        Cristina M. Posa
                                        MANATT, PHELPS & PHILLIPS, LLP
                                        7 Times Square
                                        New York, New York 10036
                                        Tel: (212) 790-4500
                                        Fax: (212) 790-4545

                                        Barbara Olshansky
                                        Tina Monshipour Foster
                                        Gitanjali S. Gutierrez
                                        CENTER FOR CONSTITUTIONAL RIGHTS
                                        666 Broadway, 7th Floor
                                        New York, New York 10012
                                        Tel: (212) 614-6439
                                        Fax: (212) 614-6499

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ABDULKADR ABDULKHALIK DAD,<br><br>   Detainee,<br>   Guantánamo Bay Naval Station<br>   Guantánamo Bay, Cuba<br><br>         Petitioner/Plaintiff,<br><br>         - against -<br><br>GEORGE W. BUSH,<br>   President of the United States<br>   The White House<br>   1600 Pennsylvania Ave., N.W.<br>   WASHINGTON, D.C. 20500;<br><br>DONALD RUMSFELD,<br>   Secretary, United States<br>   Department of Defense<br>   1000 Defense Pentagon<br>   WASHINGTON, D.C. 20301-1000;<br><br>ARMY BRIG. GEN. JAY HOOD,<br>   Commander, Joint Task Force - GTMO<br>   JTF-GTMO<br>   APO AE 09360; and<br><br>ARMY COL. MIKE BUMGARNER,<br>   Commander, Joint Detention<br>    Operations Group - JTF-GTMO,<br>   JTF-GTMO<br>   APO AE 09360,<br><br>         Respondents/Defendants. | Case No.<br><br><br><br>**ORDER** |

Upon consideration of Petitioner's Motion for Preliminary Injunction Directing

Respondents to Provide the Court and Petitioner's Counsel with Thirty Days' Advance Notice of

Any Intended Transfer from Guantánamo for Purposes Other Than Release, the memorandum of

points and authorities in support thereof, and any response thereto, it is hereby

20

ORDERED that the motion is granted.  It is further

ORDERED that Respondents, their agents, servants, employees, confederates, and any

persons acting in concert or participation with them, or having actual or implicit knowledge of

the Court's Order by personal service or otherwise, shall not remove Petitioner Abdulkadr

Abdulkhalik Dad from the Guantánamo Bay Naval Base for any purpose other than release,

unless the Court and counsel for Petitioner receive thirty (30) days' advance notice of such

removal.

**SO ORDERED.**

Date:  _____, 2005

                                          _____
                                             United States District Judge

Attorneys to be noticed:

Ronald G. Blum
rblum@manatt.com
Cristina M. Posa
cposa@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York 10036
Tel: (212) 790-4500
Fax: (212) 790-4545

Preeya M. Noronha
Preeya.Noronha@usdoj.gov
UNITED STATES DEPARTMENT OF JUSTICE
Civil Division - Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7226
Washington, D.C.  20530
(202) 514-3338